UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Personal Wealth Partners, LLC, | Case No. 21-cv-2722 (WMW/DTS) |
| Plaintiff, | |
| | **ORDER** |
| v. | |
| Gary Dean Ryberg and Kestra Investment Services, LLC, | |
| Defendants. | |

---

Before the Court is Plaintiff Personal Wealth Partners, LLC's (PWP) motion for a temporary restraining order and expedited preliminary injunction. (Dkt. 8.)  For the reasons addressed below, the motion is denied.

## BACKGROUND

PWP is a Minnesota limited liability company that provides investment advice to its clients.  Defendant Gary Dean Ryberg is a North Dakota resident whom PWP employed between January 2016 and November 2021.  Defendant Kestra Investment Services, LLC (Kestra) is a Texas limited liability company.

PWP hired Ryberg in January 2016 to serve its clients in PWP's Williston, North Dakota office.  PWP alleges that it required Ryberg to enter into an agreement to keep certain categories of information, including PWP's client data, confidential.  PWP also alleges that it assigned Ryberg approximately 325 of its clients and provided Ryberg access to all of its client records and information.

Ryberg resigned in November 2021.  PWP alleges that Ryberg began employment with Kestra on the day of Ryberg's resignation from PWP and that Ryberg encouraged PWP clients to transfer their accounts to him at Kestra.  PWP alleges that it has lost 115 of its client accounts and 30 percent of its investment assets to Kestra.

PWP commenced this action in December 2021, advancing ten claims to relief, including breach of contract, breach of the duty of loyalty, breach of the duty of confidentiality, tortious interference with contract, tortious interference with prospective business relationship, violations of the Minnesota Trade Secrets Act, misappropriation of trade secrets, and unfair competition.  PWP now moves for a temporary restraining order and expedited preliminary injunction.

## ANALYSIS

### I.     Personal Jurisdiction

As a threshold matter, Defendants argue that the Court cannot entertain PWP's motion because the Court lacks personal jurisdiction over Defendants.   Personal jurisdiction exists when authorized under Minnesota's long-arm statute[1] and the exercise of personal jurisdiction complies with the requirements of due process.  *Westley v. Mann*, 896 F. Supp. 2d 775, 788 (D. Minn. 2012).   Because Minnesota's long-arm statute "extends jurisdiction to the maximum limit consistent with due process," the Court need only evaluate whether the requirements of due process are satisfied.   *Id.* at 789 (internal quotation marks omitted).

---

[1]     The parties do not dispute that Minnesota law applies for the purpose of determining personal jurisdiction.

Due process requires that a defendant have sufficient "minimum contacts" with a forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).   Minimum contacts may establish either general jurisdiction or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8–9 (1984).   General jurisdiction exists when a nonresident defendant's contacts are so substantial and of such a nature that the state may assert jurisdiction over the defendant even for causes of action unrelated to the defendant's contacts. *See id*. at 415–16.   Specific jurisdiction exists "only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed [his] activities at the forum state and the claim arose out of or relates to those activities." *Johnson v. Arden*, 614 F.3d 785, 795 (8th Cir. 2010) (internal quotation marks omitted).   To analyze whether sufficient minimum contacts exist, a court considers (1) the nature and quality of the contacts with the forum state, (2) the quantity of those contacts, (3) the relationship between the cause of action and those contacts, (4) the interest of the forum state in providing a forum to its residents, and (5) the convenience of the forum to the parties. *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011).   The third factor—the relationship between the cause of action and the contacts to the forum state—differentiates between specific and general personal jurisdiction. *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010).

When a party consents to personal jurisdiction, however, a court need not analyze minimum contacts. *See Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199 (8th Cir. 1990). And "[o]ne of the most solidly established ways of giving such consent is to designate an agent for service of process within the State." *Id.* PWP argues that Kestra and Ryberg both have consented to jurisdiction by appointing an agent for the service of process in conjunction with registering as a business entity and broker, respectively.

Minnesota law requires non-Minnesota corporations to have a registered office and a registered agent. Minn. Stat. § 303.10. And "[a] foreign corporation shall be subject to service of process" by service on its registered agent. Minn. Stat. § 303.13. Kestra is registered to do business in Minnesota and has designated a registered agent in Minnesota. *Kestra Investment Services, LLC*, Off. of the Minn. Sec'y of State Steve Simon, https://mblsportal.sos.state.mn.us/Business/SearchDetails?filingGuid=96bd3158-da47-e411-ae2a-001ec94ffe7f (last visited Jan. 10, 2022).[2] By designating an agent for the service of process, Kestra has consented to personal jurisdiction.

A securities broker registered in Minnesota must consent to service of process. *See* Minn. Stat. § 80A.61(a) ("A person shall register as a broker-dealer . . . by filing an application and a consent to service of process . . . ."); Minn. Stat. § 80A.41(5) (defining "broker-dealer" as a "a person engaged in the business of effecting transactions in securities for the account of others or for the person's own account"). A consent to service of process designates the Minnesota Commissioner of Commerce as the broker's

---

[2]     The Court may take judicial notice of public records. *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

agent for the purposes of service of process.  *See* Minn. Stat. § 80A.88 (providing that a consent to service of process appoints the administrator as the person's agent); Minn. Stat. § 80A.41(2) (defining "administrator" as the commissioner of commerce).  Ryberg is a registered broker in Minnesota.  *Gary Dean Ryberg*, BrokerCheck by FINRA, https://brokercheck.finra.org/individual/summary/2530818 (last visited Jan. 10, 2022). Because Ryberg has consented to service of process in Minnesota and designated an agent for the service of process, he has consented to personal jurisdiction.

Accordingly, the Court has personal jurisdiction over Defendants.

**II.     PWP's Motion for Injunctive Relief**

When determining whether a temporary restraining order or preliminary injunction is warranted, the court considers four factors: (1) the probability that the movant will succeed on the merits, (2) the threat of irreparable harm to the movant, (3) the balance between this harm and the injury that the injunction will inflict on other parties, and (4) the public interest.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).[3]  The burden to establish that injunctive relief should be granted rests with the movant.  *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).  The purpose of preliminary injunctive relief is to maintain the status quo.  *Kelley v. First Westroads Bank*, 840 F.2d 554, 558 (8th Cir. 1988).  "A preliminary injunction 'is an extraordinary remedy never awarded as a matter of right.' "  *Boston Sci. Corp. v. Duberg*, 754 F. Supp. 2d 1033, 1038 (D. Minn. 2010) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24

---

[3]     PWP seeks both a temporary restraining order and an expedited preliminary injunction.  The same legal standard applies to both forms of relief.  *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989).

(2008)).  Because a moving party's "failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction," *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 893 (8th Cir. 2013) (internal quotation marks omitted), the Court begins its analysis with this *Dataphase* factor.

### A.     Irreparable Harm

To obtain preliminary injunctive relief, a party must establish the threat of irreparable harm.  *See Dataphase*, 640 F.2d at 114.  "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages."  *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009).  To demonstrate a threat of irreparable harm, the harm must be "certain and great and of such imminence that there is a clear and present need for equitable relief."  *Roudachevski v. All-American Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (internal quotation marks omitted).  A mere "possibility of harm" is insufficient.  *Id.*; *accord S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 779 (8th Cir. 2012) ("Speculative harm does not support a preliminary injunction.").

PWP first argues that, under Minnesota law, it is entitled to an inference of irreparable harm arising from Ryberg's alleged breach of contract and Defendants' alleged statutory and common law violations.  A federal court sitting in diversity jurisdiction applies federal law to procedural matters and state law to substantive matters.  *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) ("[F]ederal courts are to apply state substantive law and federal procedural law.").  As it is a procedural device, a preliminary injunction is governed by federal law.

*See Moeschler v. Honkamp Krueger Fin. Servs., Inc.*, No. 21-CV-0416 (PJS/DTS), 2021 WL 4273481, at *10–12 (D. Minn. Sept. 21, 2021) (collecting cases and observing that "[f]ederal law supplies not just the four-part *Dataphase* standard but also the content of that standard"); *see also S. Milk Sales, Inc. v. Martin*, 924 F.2d 98, 102 (6th Cir. 1991) (concluding that a preliminary injunction is procedural for the purposes of an *Erie* analysis because "the purpose of a preliminary injunction, in contrast to one that is final, 'is merely to preserve the relative positions of the parties until a trial on the merits can be held.' " (quoting *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395 (1981))).  Accordingly, PWP may not invoke the inference of irreparable harm under Minnesota state law.[4]

PWP argues that it has established an imminent threat of irreparable harm even absent an inference of irreparable harm.  In support of its argument, PWP alleges that Ryberg informed clients that he was resigning from PWP and encouraged them to move their customer accounts to Kestra.  But past harm is irrelevant to whether a preliminary injunction is warranted.  *See Miller v. Honkamp Krueger Fin. Servs., Inc*., 9 F.4th 1011, 1015 n.3 (8th Cir. 2021) (observing that "[t]he purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without" the injunction (quoting *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263,

---

[4]     PWP argues that the court in *Moeschler* overlooked precedent from the United States Court of Appeals for the Eighth Circuit that applied Minnesota state law in determining irreparable harm.  *See Overholt Crop Ins. Serv. Co. v. Travis*, 941 F.2d 1361, 1371 (8th Cir. 1991).  But the injunction at issue in *Overholt* was permanent, not preliminary.  Because a preliminary injunction merely acts to preserve the status quo until the case can be resolved on the merits, *Overholt* is inapposite.  *See S. Milk Sales, Inc.*, 924 F.2d at 102.

1270 (10th Cir. 2018))).  Most of PWP's allegations pertain to past harm, which is not a basis for preliminary injunctive relief.

PWP also argues that Ryberg's alleged disclosure of PWP's client lists to Kestra will impede PWP's ability to compete with Kestra in the future.  But harm suffered from lost customers can be measured by the lost profits on the business of those customers and, "[b]y definition, lost profits are 'reparable' through money damages." *Wells Fargo Ins. Servs. USA, Inc. v. King*, No. 15-CV-4378 (PJS/JJK), 2016 WL 299013, at *8 (D. Minn. Jan. 25, 2016); *accord CDI Energy Servs. v. W. River Pumps, Inc.*, 567 F.3d 398, 403 (8th Cir. 2009) (concluding that harm resulting from loss of customers could be remedied through damages); *Gen. Motors Corp.*, 563 F.3d at 319 (same).  Typically, "economic loss does not, in and of itself, constitute irreparable harm" to a party unless "the loss threatens the very existence of the [party's] business." *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986).  PWP alleges that it lost 115 of its client accounts as a result of Defendants' alleged misconduct and that Kestra's access to PWP's client lists could lead to more lost customers in the future.  But PWP relies on vague speculation that it will continue to lose client accounts.  And PWP does not allege that this potential future loss of future customers threatens the very existence of its business.  Accordingly, lost profits suffered as a result of Defendants' alleged ongoing misconduct do not constitute irreparable harm because PWP can be compensated through damages.

PWP also argues that Ryberg will irreparably harm PWP's relationships and goodwill with its clients.  Because it is difficult to quantify, the loss of intangible assets such as reputation and goodwill can constitute irreparable injury. *See Med. Shoppe Int'l,*

*Inc. v. S.B.S. Pill Dr., Inc*., 336 F.3d 801, 805 (8th Cir. 2003).  But a *risk* of "harm to customer goodwill" stated in "general, 'conclusory terms' " does "not show a likelihood of irreparable harm that, in turn, would justify issuing a preliminary injunction." *Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386 F. Supp. 3d 1037, 1055–56 (D. Minn. 2019) (quoting *Mgmt Registry, Inc. v. A.W. Cos.*, No. 17-5009 (JRT/FLN), 2018 WL 461132, at *6 (D. Minn. Jan. 16, 2018), *aff'd,* 920 F.3d 1181 (8th Cir. 2019)).  And beyond alleging that it has lost customers in the past—which, as addressed above, is irrelevant because it is a past harm—PWP provides no detail about how Defendants threaten to harm its goodwill or reputation.  PWP's conclusory allegations do not satisfy PWP's burden to establish that it will suffer irreparable harm if Defendants are not enjoined.

### B.    Remaining *Dataphase* Factors

PWP's failure to show irreparable harm is, by itself, a sufficient basis to deny a preliminary injunction.  *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).  Because PWP has failed to demonstrate irreparable harm, the Court declines to address the remaining *Dataphase* factors.  *See, e.g.*, *Medtronic, Inc. v. Ernst*, 182 F. Supp. 3d 925, 934–35 (D. Minn. 2016) (denying motion for temporary restraining order based solely on plaintiff's failure to demonstrate irreparable harm); *Jackson v. Macalester Coll.*, 169 F. Supp. 3d 918, 922 (D. Minn. 2016) (same).

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED** that Plaintiff Personal Wealth Partners, LLC's motion for a temporary restraining order and expedited preliminary injunction, (Dkt. 8), is **DENIED**.

LET JUDGMENT BE ENTERED ACCORDINGLY

Dated:  January 18, 2022                                      s/Wilhelmina M. Wright
                                                             Wilhelmina M. Wright
                                                             United States District Judge